UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
CHICAGO INSURANCE COMPANY,
                              Petitioner,

            -v-                                              18-CV-10450 (JPO)

GENERAL REINSURANCE                                          OPINION AND ORDER
CORPORATION and SCOR
REINSURANCE COMPANY,
                              Respondents.
---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

Petitioner Chicago Insurance Company ("Chicago") filed this petition to compel arbitration and to stay a different arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, against Respondents General Reinsurance Corporation and SCOR Reinsurance Company (collectively, the "Reinsurers"). (Dkt. No. 14.) In response, the Reinsurers have filed an Answer and Cross-Petition to stay arbitration and for declaratory relief. (Dkt. Nos. 31, 32.) For the reasons that follow, Chicago's petition to compel arbitration and stay arbitration is denied, and the Reinsurers' cross-petition to stay arbitration and for declaratory relief is granted.

I.  **Background**

General Reinsurance Corporation and SCOR Reinsurance Company reinsured Chicago under a Second Layer Special Casualty Excess Agreement of Reinsurance ("Agreement") from January 1, 1981, to December 31, 1982. (Dkt. No. 14 ¶ 7.) As part of the Agreement, the Reinsurers agreed to cover a certain amount in excess of Chicago's $1 million per occurrence retention. (Dkt. No. 14 ¶¶ 9–10.) The Agreement defines "occurrence" as "an occurrence or accident or a series of occurrences or accidents arising out of or caused by one event." (Dkt. No.

1

14 ¶ 11.) The Agreement provided that disputes between the parties shall be arbitrated before three arbitrators. (Dkt. No. 14 ¶ 12.) The Agreement also specified the process by which those arbitrators would be selected. (Dkt. No. 14 ¶ 13.) It stated: "One Arbiter shall be chosen by [Chicago], the other by the Reinsurer[s], and an Umpire shall be chosen by the two Arbiters before they enter upon arbitration . . ." (*Id.*) Chicago, along with its affiliate, Fireman's Fund Insurance, insured Thorpe, which was an asbestos distributor and installer. (Dkt. No. 14 ¶ 15.) After Thorpe filed for bankruptcy, Chicago and Fireman's Fund reached an agreement with Thorpe to settle all liability under the insurance policies. (Dkt. No. 14 ¶ 17.) Chicago billed the Reinsurers for a portion of its share of the settlement payment. (Dkt. No. 14 ¶ 17–18.) When the Reinsurers disputed the billings presented, the matter was submitted to arbitration (the "2017 Arbitration"). (Dkt. No. 14 ¶ 19.)

The 2017 Arbitration panel consisted of Chicago's appointed arbitrator, the Reinsurers' appointed arbitrator, and an umpire appointed by both party arbitrators. (Dkt. No. 14 ¶ 20.) One of the central issues in the 2017 Arbitration was whether Chicago could bill its losses on the basis that each site where Thorpe operated constituted an "occurrence" under the Reinsurance Agreement. (Dkt. No. 14 ¶ 21.) The panel rejected that billing scheme and issued a Final Award for the Reinsurers. (Dkt. No. 14 ¶ 22.) The May 17, 2017 Final Award also stated that the 2017 arbitration panel "retain[ed] jurisdiction to resolve any dispute arising out of [the] Final Award." (Dkt. No. 14 ¶ 24; Dkt. No. 19-3 at 2.)

On September 25, 2018, Chicago submitted a new billing to the Reinsurers. (Dkt. No. 14 ¶ 26.) As part of that billing, Chicago stated that the "final award . . . set forth protocols for Chicago's submission of claims to [the Reinsurers]," and that the "loss allocation was prepared in accordance with the Award's protocols." (Dkt. No. 31 ¶ 41; Dkt. No. 31-2 at 5.) The

2

Reinsurers rejected this new billing and alerted the 2017 Arbitration panel. (Dkt. No. 31 ¶¶ 19–20.) In response, the umpire wrote to "confirm[] that [the panel] retained jurisdiction to resolve any dispute arising out of the Final Award," and stated that the current dispute over the new billing "clearly" arose out of that Final Award. (Dkt. No. 31-5.) He noted that the decision was made by a majority of the panel — that is, without the participation of the Chicago-appointed arbitrator. (*Id.*) The Chicago-appointed arbitrator wrote separately to note that he would "not [be] participating in this matter because [he] see[s] no jurisdictional basis to do so." (Dkt. No. 31-6 at 1.)

For its part, Chicago commenced a separate arbitration to resolve the dispute. (Dkt. No. 14 ¶ 37.) The Reinsurers declined to proceed with the new arbitration, stating their position that the 2017 Arbitration panel retained jurisdiction. (*See* Dkt. No. 14 ¶ 38; Dkt. No. 31 ¶ 28.) On November 9, 2018, Chicago filed a petition to compel the Reinsurers to arbitrate in front of a new panel and stay the arbitration in front of the 2017 arbitration panel. (Dkt. No. 14.) In response, the Reinsurers filed a cross-petition to stay the new arbitration and for declaratory relief indicating that the 2017 arbitration panel has jurisdiction to resolve the dispute. (Dkt. Nos. 31, 32.)

## II. Discussion

Under Section 4 of the FAA,

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction [over the underlying controversy] for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to

proceed to arbitration in accordance with the terms of the agreement." *Id.* While "the FAA does not independently confer subject matter jurisdiction on the federal courts," *Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012) (internal quotation marks and citation omitted), in this case the Court has diversity jurisdiction to adjudicate the dispute between the parties. (*See* Dkt. No. 14 ¶¶ 1–4.)

Chicago chiefly argues that the 2017 Arbitration Panel is *functus officio*, and therefore a new arbitration must take place according to the Agreement. (Dkt. No. 17 at 10–15; Dkt. No. 41 at 10–20.) However, this argument is largely irrelevant here. "The *functus officio* doctrine dictates that, once arbitrators have fully exercised their authority to adjudicate the issue submitted to them, their authority over those questions is ended, and the arbitrators have no further authority, absent agreement by the parties, to redetermine those issues." *General Re Life Corp. v. Lincoln Nat'l Life Ins. Co.*, 909 F.3d 544, 548 (2d Cir. 2018) (citation omitted). In this case, the 2017 arbitration panel explicitly "retain[ed] jurisdiction to resolve any dispute arising out of [the] Final Award." (Dkt. No. 14 ¶ 24; Dkt. No. 19-3 at 2.) Chicago consented to this retention of jurisdiction when it chose not to dispute or seek to vacate the Final Award. (*See* Dkt. No. 14 ¶ 24.) The *functus officio* doctrine "is applicable only once the arbitrator's assigned duties have come to an end." *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 343 (2d Cir. 2010). Due to the retention of jurisdiction in the Final Award, the arbitrators' duties have definitionally not come to an end if the current dispute "arises out" of the Final Award.

Whether this dispute falls within the 2017 Arbitration panel's reservation of jurisdiction is a "gateway dispute . . . [that] raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Chicago argues that this dispute does not arise out of the Final Award, but instead "out of the separate 2018 Billing that relates to

. . . losses . . . that were not at issue in the prior billings or arbitration." (Dkt. No. 41 at 12.) However, Chicago repeatedly claimed that the new bill that it sent to the Reinsurers was offered pursuant to the "protocols" set forth by the Final Award. (*See, e.g.*, Dkt. No. 31-2 at 5.) Indeed, it asserted that "[f]ollowing the issuance of the Award, Chicago examined all available documentation . . . to identify events meeting the Award's [billing] requirement." (Dkt. No. 31-2 at 6.) In response, the Reinsurers wrote to the 2017 Arbitration Panel explaining that they had been presented with a bill that purported to comport with the "protocols" of the Final Award, and asked the panel to reject the new bill. (Dkt. No. 31-4.)

Based on that submission, which recounted Chicago's claim that the new billing flowed from the Final Award, a majority of the panel determined that the current dispute "clearly" fell within their reserved jurisdiction. (*See* Dkt. No. 19-3 at 2; Dkt. No. 31-5.) It is true that the Chicago-appointed arbitrator disagrees that the final billing should be adjudicated by the 2017 Arbitration Panel. (Dkt. No. 31-6 at 1.) However, the individuals best situated to interpret what was meant by the award is the majority that *authored* the award and determined that the panel retained jurisdiction to adjudicate the propriety of the new bill in light of its Final Award. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) ("[T]he . . . arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it.") The panel majority's determination merits some solicitude.

Given Chicago's own repeated statements that the final bill arose from the "protocols" set forth coupled with the panel majority's assertion of jurisdiction, it is clear that the current dispute "arises out" of the Final Award. Accordingly, this Court concludes that the 2017 Arbitration panel retains jurisdiction to adjudicate whether the new bill comports with its Final Award.

5

### III. Conclusion

For the foregoing reasons, Petitioner's petition to compel arbitration and stay arbitration is DENIED, and Respondents' cross-petition to stay arbitration and for declaratory relief is GRANTED.

The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: October 21, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge