

FREEBORN & PETERS LLP

SEAN THOMAS KEELY
Partner

Freeborn & Peters LLP
*Attorneys at Law*
The Helmsley Building
230 Park Avenue, Suite 630
New York, NY 10169

(646) 993-4444 direct
(212) 218-8761 fax

skeely@freeborn.com

www.freeborn.com

November 11, 2019

**VIA ECF**

Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square, Room 2101
New York, NY 10007

> Re:   **Chicago Ins. Co. v. General Reinsurance Corp. and SCOR Reinsurance Co. (18-Civ-10450 (JPO)) – Motion for Stay Pending Appeal**

Dear Judge Oetken:

  We represent Petitioner Chicago Insurance Company ("Chicago") in the above-referenced matter and respectfully submit this letter motion pursuant to the Court's Individual Practices 1.A.

  On October 22, 2019, this Court denied Chicago's petition to compel arbitration and stay arbitration and granted the cross-petition of General Reinsurance Corporation and SCOR Reinsurance Company (collectively, the "Reinsurers") to stay arbitration and for declaratory relief, and subsequently entered final judgment (the "Order"). In so doing, the Court vacated a prior temporary restraining order and preliminary injunction that had been entered preventing both Chicago and the Reinsurers from proceeding with competing arbitration proceedings until the issue of appropriate arbitral jurisdiction could be resolved.

  The Court's Order raises significant questions, including (1) the scope of the *functus officio* doctrine; (2) whether in light of that doctrine an arbitration panel can "retain jurisdiction" to resolve any dispute "arising out of" an award for an unlimited period of time; and (3) whether a prior arbitration panel or new arbitration panel should decide whether the parties' new dispute "arises out of" a prior award. Pursuant to Federal Rule of Civil Procedure 62(d), Chicago hereby requests that the Court stay its Order and maintain the status quo pending resolution of Chicago's appeal.

## BACKGROUND

  The events giving rise to Chicago's petition have been set forth in detail in the parties' prior submissions. This case presents the question of which arbitral panel is authorized to hear a dispute arising out of a reinsurance bill that Chicago issued to the Reinsurers in 2018. After the Reinsurers rejected the bill, Chicago demanded arbitration and called on the Reinsurers to appoint an arbitrator as required in their contract. The Reinsurers refused and instead attempted to refer the dispute to arbitrators who had considered a prior bill from Chicago in 2013 and had issued a Final Award in



that dispute in 2017 (the "2017 Panel").

On November 9, 2018, Chicago filed a petition to compel arbitration and for a stay of proceeding by the 2017 Panel. On November 15, 2018, the Court granted Chicago's request for a temporary restraining order ("TRO") enjoining the Reinsurers from proceeding before the 2017 Panel and subsequently entered a stipulation and order staying action in the competing arbitration proceedings pending a decision on the parties' petition and cross-petition. [Dkt No. 29] On October 22, 2019, this Court issued its Order denying Chicago's petition and granted Reinsurers' cross-petition. [Dkt No. 50] On October 31, 2019, Chicago filed a Notice of Appeal. [Dkt No. 52]

## ARGUMENT

This Court "undoubtedly has the power to stay the final effect of [its own] Order during the pendency of the appeal." *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010); *Rakovich v. Wade*, 834 F.2d 673, 674 (7th Cir. 1987); *see also* Fed. R. App. P. 8(a)(1) ("A party must ordinarily move first in the district court for…a stay of the judgment or order of a district court pending appeal."); Fed. R. Civ. P. 62(d) ("While an appeal is pending from…final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."). The decision to stay an order is within the discretion of the court, based on the circumstances of the case. *Jock*, 738 F. Supp. 2d at 447; *Hilton v. Braunskill*, 481 U.S. 770, 777, 107 S.Ct. 2113, 2119 (1987) ("Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."). In general, four factors are considered:

1. whether the applicant has made a showing of likely success on the merits;

2. whether the applicant will be irreparably injured absent a stay;

3. whether issuance of the stay will substantially injure the other parties; and

4. where the public interest lies.

*Jock*, 738 F.Supp.2d at 447, *citing Nken v. Holder*, 556 U.S. 418, 129 S.Ct. 1749, 1761 (2009).

All four factors need not strongly support a stay. Rather, the factors are balanced. 16A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3954 ("The four factors are balanced; thus, for example, if the balance of harms tips heavily enough in the stay applicant's favor then the showing of likelihood of success need not be as strong, and vice versa"). Here the factors weigh in favor of a stay of the Court's October 22 Order.

### I. Reinsurers Will Suffer No Harm

When considering a stay, a court assesses whether a stay will substantially injure the other parties interested in the proceeding. *Jock*, 738 F.Supp.2d at 447. In this case, this factor clearly favors a stay. The Reinsurers will not suffer any harm. As noted above, Chicago has submitted a



FREEBORN & PETERS LLP

Honorable J. Paul Oetken
November 11, 2019
Page 3

billing to Reinsurers, which the Reinsurers refuse to pay. Both parties agree that an arbitration panel must resolve that dispute. The question on appeal will be whether an arbitration panel appointed pursuant to the 2018 arbitration demand or the former 2017 arbitrators should do so.

A stay of the Court's Order, and thus stay of proceedings before the 2017 Panel, pending resolution of that threshold question does not prejudice the Reinsurers. They continue to hold the money to which Chicago claims it is entitled under the 2018 billing. *See Greenidge v. Allstate Ins. Co.*, No. 02 Civ. 9796 JCF, 2003 WL 22871905 at *3 (S.D.N.Y. Dec. 3, 2003) ("The only real consequence for Allstate is that the determination of its pending summary judgment motion will be deferred, and that is not prejudicial."). Indeed, a stay arguably ***benefits*** the Reinsurers; not only do they keep the money, but they are not required to incur the burden and expense of arbitral proceedings before the 2017 Panel that may be void.

When considering Chicago's motion for a TRO, this Court (Judge Torres) found that the Reinsurers would not suffer harm if the TRO was granted. "Regardless of whether the TRO is granted, however, respondents will suffer no harm at all because they have withheld payment on the 2018 billing. This will remain the case even if the TRO is granted. The TRO simply 'maintains the status quo' until the court decides the petitioner's petition to compel arbitration." Ex. 1 (11/15/2018 Tr.) at 25:22-26:2. This reasoning in granting Chicago's prior TRO motion applies fully to Chicago's instant motion. As with the TRO, a stay simply maintains the status quo until the appellate court resolves Chicago's appeal. Just as the Reinsurers suffered no harm while the TRO/Preliminary Injunction remained in place, they suffer no harm if a stay remains in place pending appeal.

The Second Circuit has held that the factors relating to a motion to stay may be viewed as a formula, under which the various factors, including the likelihood of success and the harm to the non-movant, can be assigned values and multiplied against one another to determine where the balance tips. *Greenidge*, 2003 WL 22871905 at *2, *citing Mohammed v. Reno*, 309 F.3d 95, 101 n.10 (2d Cir. 2002). The formula is useful and easy to apply where one of the factors is zero. *Greenidge*, 2003 WL 22871905 at *2. That is the case here. The "harm" to Reinsurers from a stay is zero, and a stay should be granted so long as Chicago has at least "some small chance of succeeding on" its appeal and "can demonstrate some harm if the stay is denied." *Id.*

## II.   Chicago Will Suffer Irreparable Harm Absent a Stay

In deciding whether to grant a stay, the Court considers any harm that the applicant will suffer if a stay is not granted. *Jock*, 738 F.Supp.2d at 447. Here, absent a stay, Chicago will be forced to proceed with arbitration before the 2017 Panel, while that panel's authority to consider and resolve the dispute is on appeal. If Chicago then succeeds on its appeal, it will have spent time and resources arbitrating before a panel with no jurisdiction, rendering any award by that 2017 Panel unenforceable. Chicago will then need to re-arbitrate the 2018 billing before a new panel. This constitutes irreparable harm. *Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997) ("Maryland would be irreparably harmed by being forced to expend time and resources arbitrating an issue…for which any award would not be enforceable"); *U.S. v. American Soc. of Composers, Authors and Publishers*, No. Civ. 13-95 (WCC), 1991 WL



501864 at *2 (S.D.N.Y. Oct. 3, 1991) (a party can be harmed when forced to invest time, effort and money that might be wasted if the party prevails on appeal).[1]

### III. Chicago Has a Likelihood of Succeeding on Appeal

"[A] movant need not always establish a high probability of success on the merits. Probability of success is inversely proportional to the degree of irreparable injury evidenced." *Cuomo v. U.S. Nuclear Regulatory Com'n*, 772 F.2d 972, 974 (D.C. Cir. 1985). "[M]ore of one excuses less of the other." *Greenidge*, 2003 WL 22871905 at *2 (internal quotation omitted). S*ee also American Soc. of Composers, Authors and Publishers*, 1991 WL 501864 at *1 (noting that most courts have applied a flexible standard whereby if the movant can demonstrate the remaining factors strongly favor interim relief, a stay can be granted if the movant has made a substantial case on the merits).

Although the Court denied Chicago's petition, Chicago respectfully submits that it has substantial arguments that may prove successful on appeal. When the Court considered Chicago's prior request for a TRO, it found that there are "serious questions about whether the 2017 panel is *functus officio*," [*see* Ex. 1 at 25:12-13] and, in granting that motion, determined Chicago had some likelihood of succeeding on that claim. While this Court has subsequently ruled against Chicago, the TRO is evidence of serious questions on this issue.[2]

In addition, where a party's appeal presents a novel issue to the appellate court, the "chance of success" factor weighs in favor of granting a stay. *Jock*, 738 F. Supp. 2d at 447; *Genesis*, 367 B.R. at 521 (staying order because "[w]hen a circuit court has not yet decided an issue of law, there may be substantial grounds for a difference of opinion."). That is the case here.

In its Order, the Court cited two Second Circuit cases and one U.S. Supreme Court case. But none of these cases addressed a fact pattern similar to that with which the Court was confronted here. In *General Re Life Corp. v. Lincoln National Life Ins. Co.*, the Second Circuit was not confronted with the question of whether a dispute would be heard by a new arbitration panel or a prior panel, but rather whether to confirm certain arbitration awards that were clarified. 909 F.3d 544, 546 (2d Cir. 2018). That is not the case here. Similarly, in *T.Co Metals, LLC v. Dempsey Pipe & Supply*, the Second Circuit was faced with the parties' motions to vacate, modify and correct an arbitration award amended at the parties' requests pursuant to ICDR rules. Again, this case presents no such issue.

Finally, in *Howsam v. Dean Witter Reynolds, Inc.*, the Supreme Court considered whether a court or arbitrator was to apply a National Association of Securities Dealers time limit rule to the

---

[1] The Court reached a similar conclusion when it found Chicago would suffer irreparable harm if the TRO was not granted. Ex. 1 (11/15/2018 Tr.) at 25:19-22. Again, the Court's analysis applies fully to Chicago's motion to stay.

[2] Obviously, the Court need not conclude that its prior ruling was in error or that Chicago will necessarily prevail on appeal for a stay to be granted. *Jock*, 738 F. Supp. 2d at 447.



underlying controversy. 537 U.S. 79, 81 (2002). The Court held the matter was for the arbitrator because it was not a "question of arbitrability," but resembled "gateway questions" that the Court had found arbitrators were to decide. *Id.* at 84-85. This case does not involve a time limit rule, but instead presents a fundamentally different question regarding arbitrator authority *ex ante*.

Unlike those cases, this dispute and the Court's Order involve: (1) competing petitions to compel arbitration of a dispute; (2) whether an arbitration panel can "retain jurisdiction" for an unlimited period of time to "resolve any dispute arising out of [the] Final Award;" and (3) whether a Court, the 2017 Panel, or a new arbitration panel decides whether the 2018 billing "arises out of the Final Award." A stay is warranted while the Second Circuit considers and resolves these issues.

### IV.   The Public Interest Will Not Be Negatively Affected by the Issuance of a Stay

This case is a private dispute, which the parties agree must be resolved by a private arbitration panel. There is no public interest implicated. *See Greenidge*, 2003 WL 22871905 at *3 (noting that the public interest was not implicated in a purely private litigation); *Local 344 Leather Goods, Plastics & Novelty Workers' Union ALF-CIO v. Singer Co. Piecework Control Systems*, 84 F.R.D. 424, 425 (N.D. Ill. 1979) (finding "the public interest would not be adversely affected by the issuance of a stay" of order compelling arbitration pending appeal).

### CONCLUSION

For the reasons set forth above, the Court should stay its October 22, 2019 Order and reinstate the preliminary injunction against the competing arbitration proceedings pending resolution of Chicago's appeal of the Order.

Respectfully submitted,

Sean Thomas Keely

cc: Robert J. Bates, Jr. (via ECF)